UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARY ANN SATTERTHWAITE**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> Defendant. | Civil Action No. 09-cv-2374 (RLW) |

# MEMORANDUM OPINION[1]

This matter is before the Court on Defendant District of Columbia's ("District") Motion for Summary Judgment (Dkt. No. 21). Plaintiff Mary Ann Satterthwaite ("Plaintiff") asserts three counts against the District:

- Count I: Discrimination under 42 U.S.C. § 1981 based on race

- Count II: Discrimination under Title VII based on race and gender; and

- Count III: Discrimination under D.C. Human Rights Act based on race and gender.

Plaintiff seeks $2.3 million in compensatory damages against the District, lost income and back pay, and attorneys' fees and costs.

For the following reasons, the District's Motion is **GRANTED**. For purposes of this ruling, the Court will assume that the reader is familiar with the factual assertions and arguments made by the parties, and will not recite those again here.

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

1

## ANALYSIS

A. **Standard of Review**

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing FED. R. CIV. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A party, however, must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. Id. at 252.

B. **The District's Statement of Material Facts Not In Dispute Is Deemed Admitted.**

In considering whether the District is entitled to summary judgment, the Court will deem the District's statement of material facts not in dispute as admitted. Plaintiff has failed to controvert the District's facts and has repeatedly failed to submit an opposing statement of facts that complies with the local rules.

On December 17, 2010, the District filed its Motion for Summary Judgment. (Dkt. No. 21). In compliance with the local and federal rules, the District submitted a Statement of Material Facts Not in Dispute, listing 33 short and concise facts, each supported by specific references to record evidence.[2] (Dkt. No. 21 at 19-22). After asking for and receiving an extension of time to January 25, 2011, Plaintiff filed her Opposition brief on January 26, 2011.

---

[2] The Court has satisfied itself that, but for a few minor and irrelevant points, the record evidence upon which the District relies supports its Statement of Material Facts Not in Dispute. See Jackson v. Finnegan Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996) (stating that, after having struck nonmovant's opposing statement of facts, district court's "obligation was to determine whether the [movant's] statement of undisputed material facts was adequately supported by the record.") (internal quotation marks omitted).

(Dkt. No. 23). Plaintiff's "Statement of Facts" in that brief was merely an exact recitation of the unsupported factual allegations in her Amended Complaint. (Dkt. No. 23 at 1-5). Plaintiff also included in her brief a "Statement of Material Facts in Dispute," listing 6 conclusory statements with no record support. See, e.g., Dkt. No. 23 at 6 (listing the allegation that "the Defendant violated it's on [sic] policies as applied to Plaintiff because of her race and sex" as a material fact in dispute). Instead of offering specific record support for these six contentions, Plaintiff merely stated in a footnote that her statement of facts was "based on the depositions of Dana Friend, Joseph E. Sanchez, Gloria Trotman, and Anne B. Wicks." (Dkt. No. 23 at 6 & n.1). Plaintiff then "cut and pasted" numerous long excerpts (a total of 28 pages) of these depositions into her brief and attached the full transcripts of those depositions as exhibits to her Opposition. The excerpts inserted into her brief were merely introduced with the statement: "Depositions of Dana Friend, Joseph E. Sanchez, Gloria Trotman, and Anne B. Wicks show that a reasonable Trier of fact could make a finding of discrimination." (Dkt. No. 23 at 10). Plaintiff failed to dispute or controvert any of the District's facts. In its Reply, the District asked this Court to deem its Statement of Material Facts as conceded due to Plaintiff's failure to comply with LCvR 7(h)(1). (Dkt. No. 25 at 1-2).

On July 14, 2011, this Court held a status conference to discuss the deficiencies in Plaintiff's opposing statement of facts. The Court explained to Plaintiff's counsel in detail why Plaintiff's submission was deficient and how to correct the deficiencies. The Court instructed Plaintiff's counsel that Plaintiff "need[s] to respond to the District's facts" "one by one." If Plaintiff disputed any of the District's facts, the Court instructed Plaintiff to include a "short statement of what you think the fact really is," citing the evidence that supports Plaintiff's assertion.

The Court then instructed Plaintiff's counsel that, if Plaintiff believed there were additional material facts beyond what the District listed, those facts could be added to Plaintiff's opposing statement of facts. Plaintiff's counsel agreed at the hearing that he would "clear up the facts to respond one by one to the district's facts" to "make it clearer for the Court . . . ." Although the District again requested that its statement of facts be deemed admitted and that Plaintiff not be given the opportunity to cure her deficiencies, the Court denied the District's request "with some reluctance." Warning Plaintiff's counsel that the Court would not look favorably on future "blatant noncompliance" with the local rules, the Court allowed Plaintiff an opportunity to cure her opposing statement of facts. The Court made clear, however, that Plaintiff would not have the opportunity to write a new brief or to make new arguments: "What simply you will be permitted to do is to submit a new responsive statement that complies with the local rules and with the instructions that I've given you at this hearing."

Although Plaintiff was to file her revised opposing statement of facts on August 15, 2011, she did not do so until August 16, 2011. (Dkt. No. 26). Plaintiff's "revised" filing again fell far short. Plaintiff again wholly failed to respond to the District's facts one by one, and to inform the Court which facts were disputed. Rather, Plaintiff slightly re-worded and revised her initial "Statement of Material Facts in Dispute." The revised statement now contained 8 paragraphs, which consisted of a mix of argument, legal conclusion, and an occasional purported fact, none of which responded to, or refuted, the facts set forth in the District's Motion. (Dkt. No. 26 at 1). Examples of Plaintiff's revised Statement of Material Facts include:

- "Plaintiff is being discriminated against and denied equal pay as for working from 2007 to October 2010 in this position a white male had previously held at a Grade 15. The Exhibits 1,

- 2, 3, 4; Depositions of DANA FRIEND, JOSEPH E. SANCHEZ, GLORIA TROTMAN, AND ANNE B. WICKS." (Dkt. No. 26 at 1-2).

- "That the Defendant violated it's on [sic] policies as applied to Plaintiff because of her race and sex and Plaintiff have has [sic] evidence to show a prima face [sic] case for race and sex discrimination. The Exhibits 2, 3, 4; Deposition of Joseph E. Sanchez, Gloria Trotman, and Anne B. Wicks." (Dkt. No. 26 at 2).

Plaintiff's 28-page "revised" opposing statement of facts again included long excerpts of deposition transcripts and newly-raised legal arguments, which this Court expressly prohibited Plaintiff from including.

Under this Court's Local Civil Rule 7(h)(1):

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. <u>An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement</u>. Each such motion and opposition must also contain or be accompanied by a memorandum of points and authorities and proposed order as required by LCvR 7(a), (b) and (c). <u>In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion</u>.

(emphasis added). As our Circuit Court of Appeals has explained, "a district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996) (quoting Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988), cert. denied sub nom. Twist v. Thornburgh, 490 U.S. 1066 (1989)).  Nonetheless, by wholly failing to comply with the Local Rules and this Court's detailed instructions, particularly where the Court granted Plaintiff an opportunity to cure her blatant noncompliance, it is clear that Plaintiff expects the Court to sift through the entire record and find support for her various conclusions. Moreover, by including new arguments in her revised statement despite this Court's express instruction not to do so, it is clear that Plaintiff has no regard for this Court's orders. The Court has carefully considered the matter, and in an exercise of its discretion, rules that Plaintiff's revised Statement of Opposing Material Facts fails to comply with the Local Rules and will be stricken and therefore not considered. Accordingly, the Court will treat the District's Statement of Material Facts Not in Dispute as admitted.

## C. Count I: Discrimination Under 42 U.S.C. § 1981 Based on Race

In Count I, Plaintiff asserts a cause of action against the District of Columbia under 42 U.S.C. § 1981. (Dkt. No. 7 at 6-7).  Section 1981 prohibits all persons from discriminating on the basis of race in the creation or enforcement of contracts. 42 U.S.C. § 1981 (2006).  In order to establish liability against a municipality for a claim alleging a violation of § 1981, a plaintiff must establish: first, that the defendant discriminated against her on the basis of her race with respect to the making or enforcement of contracts; and second, that the discrimination was effectuated pursuant to an official policy or custom of the District.  See McGovern v. City of

Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (rejecting plaintiff's § 1981 claim against a municipality in part due to the plaintiff's failure to allege that the discrimination he suffered was the result of an "official policy or custom" of the city); see, e.g., Dickerson v. Dist. of Columbia, 806 F. Supp. 2d 116, 120 (D.D.C. 2011); Hamilton v. Dist. of Columbia, 720 F. Supp. 2d 102, 114 (D.D.C. 2010); 5-87 MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P § 87.19 ("[t]he fact that an employee of a municipality deprived the plaintiff of his right to make and enforce contracts is not alone a sufficient basis for holding the municipality liable…the plaintiff must establish by a preponderance of the evidence that the action…was either the result of an official policy of the municipality or an established custom of the municipality"); 3C FED. JURY PRAC. & INSTR. § 170.23 (5th ed.) (requiring a finding that the discrimination experienced by a § 1981 plaintiff was pursuant to "a governmental custom, policy, ordinance, regulation or decision").

The District argues that Plaintiff has failed to allege or establish that the District had a custom or policy that led to discrimination against her, and that such failure is fatal to Plaintiff's Section 1981 claim. (Dkt. No. 21 at 9-11). Plaintiff fails to refute this argument in her opposition brief. As such, this Court may treat the District's argument as conceded. See LCvR 7(b); F.D.I.C. v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997); Newton v. Office of the Architect of the Capitol, 2012 WL 768204, at *10 (D.D.C. Mar. 12, 2012) ("When a party files an opposition addressing only certain arguments raised in a dispositive motion, a court may treat those arguments that the non-moving party failed to address as conceded.").

Even assuming the District's argument were not conceded, Plaintiff has failed to raise a genuine issue of fact regarding a discriminatory policy or custom on behalf of the District. Construing Plaintiff's Opposition very liberally, Plaintiff at best attempts to establish that Ms. Anne Wicks (the Executive Officer of the D.C. Courts) is a "policymaker" and therefore

established a District of Columbia policy of unlawful discrimination by her single act of alleged discrimination against the Plaintiff.  Although the record reflects that Ms. Wicks is responsible for the administration and management of the D.C. courts and has the authority to hire and fire employees, there is no evidence that she was responsible for establishing the *employment policy* for the District of Columbia.  See Tabb v. Dist. of Columbia, 605 F. Supp. 2d 89, 96 (D.D.C. 2009).  Moreover, for the reasons set forth below, even if Ms. Wicks had such policymaking authority, Plaintiff has failed to show that any such policy or custom amounted to discrimination.

### D. Counts II and III: Racial and Gender Discrimination Under Title VII and the D.C. Human Rights Act

Both Title VII and discrimination claims brought under the D.C. Human Rights Act are analyzed under McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Gaujacq v. EDF, Inc., 601 F.3d 565, 576 (D.C. Cir. 2010).  Under this framework, the plaintiff seeking to prove disparate treatment by circumstantial evidence first has the burden of establishing a prima facie case of disparate treatment by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006).  Once she establishes a prima facie case, the burden shifts to the defendant to "articulate" a "legitimate, non-discriminatory reason" for the adverse employment action, after which the plaintiff must have the opportunity to show that the articulated reasons were pretext for discrimination.  McDonnell Douglas, 411 U.S. at 802-04.  The purpose of the prima facie case is to demonstrate "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion.'"  Furnco Const. Corp. v. Waters, 438 U.S. 567, 576 (1978).

Where the employer has asserted a legitimate, non-discriminatory reason for the employment action, the employee's burden of demonstrating pretext "merges" with her ultimate burden of demonstrating discrimination, which can be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). This Circuit has made clear that where the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the court is to consider only "one central question" in deciding the employer's summary judgment motion: "[h]as the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

Even assuming that Plaintiff has established a prima facie case of discrimination necessary to satisfy her burden under the first step of the McDonnell Douglas test, Plaintiff has ultimately failed to show any genuine issue of material fact necessitating a trial. The record in this case amply supports the District's proffered legitimate, non-discriminatory reasons for the downgrade. According to the undisputed material facts, the position was downgraded from a Grade 15 to a Grade 14 because the Executive Office determined that it would create an "[im]prudent organizational structure" to have multiple senior management positions graded at the 15 level in a division as small as the Capital Projects and Facilities Management Division, which is the division encompassing the Building Operations Manager position and which includes only 28 positions. (Dkt. No. 21 at 20 ¶¶ 11-15). In particular, setting the Buildings

Operations Manager at Grade 15 would have made the Deputy Director of that division (also a Grade 15 position) unable to supervise the Building Operations Manager, and would have necessitated a higher salary for the Deputy Director of that division than the Executive Office was prepared to invest in such a small division. (Id.).

In light of these undisputed legitimate, non-discriminatory reasons for the District to downgrade the position from a Grade 15 to a Grade 14, Plaintiff has failed to raise a genuine issue of fact demonstrating that these reasons were pretextual or are unworthy of credence. Nor has Plaintiff introduced any evidence demonstrating that discrimination, and not the District's articulated non-discriminatory reasons, more likely than not motivated the Defendant's decision to downgrade the position.

Although Plaintiff repeatedly alleges that the position was downgraded "after Plaintiff's race and gender became known to the Executive Office," (Dkt. No. 7 at ¶ 21), that allegation is not supported by the evidence. Ms. Wicks' undisputed testimony reflects that Ms. Wicks was well aware of Plaintiff's race and gender, having known Plaintiff personally for more than ten years. (Wicks Dep. 32:6-15). Moreover, it is undisputed that when the previous Building Operations Manager, Zsolt Szalay (a white male), was hired for that position, he began that position as a Grade 14. (Dkt. No. 21 at 20 ¶ 8). His grade was increased to 15 only after he complained that he was led to believe at the time of his hire that he would be paid at a Grade 15 level. (Id. at ¶¶ 9-10). Although Ms. Wicks agreed to increase the grade of the Building Operations Manager position to Grade 15 at that time, she did so "for the incumbent only." (Id. at ¶ 10). Given this undisputed evidence, it is clear that, notwithstanding any error that the District may have made when it first announced the vacancy as a Grade 15 after Mr. Szalay's retirement, the District's ultimate reduction of the position to a Grade 14 is consistent with its

conduct when Mr. Szalay was initially hired. Thus, given the strong support in the record for the Defendant's asserted non-discriminatory reasons for its actions, and Plaintiff's failure to identify or introduce any evidence suggesting that these reasons were pretextual and/or that the District discriminated against her, the District is entitled to summary judgment.

### E. Plaintiff's Newly-Asserted Claim Under the Equal Pay Act

Plaintiff also asserts a claim under the Equal Pay Act, raised for the first time in her opposition brief to the District's motion for summary judgment. (Dkt. No. 23 at 39). The Equal Pay Act prohibits employers from paying "wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1) (2006).

This Court will not address Plaintiff's Equal Pay Act claim given that it was raised for the first time in her Opposition to the District's Motion for Summary Judgment. See Gonzalez v. Holder, 763 F. Supp. 2d 145, 149 n.1 (D.D.C. 2011); Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (party may not amend its pleading by introducing claims for the first time in an opposition brief). Even if this Court were to construe Plaintiff's reference to the Equal Pay Act in her Opposition as a Motion for Leave to Amend the Complaint, this Court would still deny leave to amend because there is nothing to indicate that justice requires granting such leave. Plaintiff offers no reason why she could not have included an Equal Pay Act claim in her Amended Complaint. Moreover, as detailed earlier in this Opinion, in responding to the District's motion for summary judgment, Plaintiff has repeatedly violated this Court's Local Rules. Finally, Plaintiff failed to accompany her brief with an "original of the proposed pleading as amended" as required by LCvR 7(i). Given such repeated infractions, combined with the lack of any ostensible reason justifying its delay in adding this claim at this stage, this Court will not the newly-raised Equal Pay Act claim.

11

Even assuming she had properly asserted an Equal Pay Act claim, summary judgment for the District would still be appropriate. An employer is not liable under the Equal Pay Act where any differential in pay was "based on any other factor other than sex." 29 U.S.C. § 206(d)(1) (2006). This Court has already concluded that there is substantial and undisputed evidence in the record demonstrating that the District had legitimate, non-discriminatory reasons for lowering the grade of the Building Operations Manager position from 15 to 14. This evidence has been discussed *supra* with respect to the Title VII and DCHRA claims, and the Court need not repeat it here.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. An order accompanies this Memorandum.

Date: March 30, 2012

ROBERT L. WILKINS
United States District Judge